## Swarthmore Presbyterian Church Appeal

*Norman L. Haase,* for appellants.
*Peter J. Nolan,* for appelles.

deFURIA, *J.,* May 3, 1977—This is an appeal by the Swarthmore Presbyterian Church and the ABC-Swarthmore, Inc., from real estate taxes levied by the County of Delaware and the Institution District of the County of Delaware and the Wallingford-Swarthmore School District. The exemption of the particular property in question is governed by the General County Assessment Law of May 22, 1933, P.L. 853, art. II, sec. 204, as amended, 72 P.S. §§ 5020-204. Appellee concedes that both appellants are charitable institutions within the meaning of the act.

The Swarthmore Presbyterian Church, which owns the real estate in question, has leased the premises to ABC-Swarthmore, Inc. for the purpose of operating "A Better Chance" school to provide scholarships and tutoring to assist children who would otherwise not be able to obtain a college education. It is also agreed to by appellee that the use of the premises is one exclusively reserved to an association of learning and charity within the meaning of the General County Assessment Law.

The testimony indicated that the church did not receive any profit whatsoever from the lease but, in fact, donated $1,800 a year in order to cover the annual carrying charge on the premises. It was clearly established that should the donations and

pledges upon which the ABC-Swarthmore, Inc. is sustained ever exceed the actual requirements, no such profit would go to an individual or to a corporation operated for private profit but, in fact, any such excess would remain on hand for subsequent ABC expenses. Under the terms of the lease agreement, the use of the premises is restricted exclusively to that of an ABC residence only.

The facts upon which both parties agree, and which the testimony clearly indicates, are that the landlord and tenant in this case are both tax-exempt, charitable institutions within the meaning of the act, that the church owns the premises which it has leased to the ABC School, that the actual use of the premises by the tenant does not violate its tax-exempt status, that the church does not receive any profit from the ABC School and that the church maintains control of the leased premises by agreement which specifically restricts the use to that of an ABC School.

Appellees' position is very clear. They maintain that because the church, the actual owner of the property, is not in full use and possession of the property, then the tax-exempt status is lost no matter who is in possession or what the actual use of the property may be. Appellee relies on section (c) of 72 P. S. § 5020-204 which states as follows: "Except as otherwise provided in clause (10) of this section, all property, real and personal, actually and regularly used and occupied for the purposes specified in this section shall be subject to taxation, unless the person or persons, associations or corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely."

Appellees' authority for denying the tax-exempt

status of the property in question is Appeal of the Community College of Delaware County, 58 Del. Co. 641, aff'd. 5 Pa. Commonwealth 487, 290 A.2d 432 (1972). In a similar factual situation where one charitable institution leased property from another charitable institution, the courts strictly construed the language above quoted which required the user and the owner to be one and the same tax-exempt entity.

Appellants claim that since the Community College case, this court and the Commonwealth Court have no longer denied tax-exempt status on the mere basis that a lease existed between two otherwise exempt institutions but that the courts have made inquiry into the actual use of the property in question and to the extent that the owner maintains control of those premises. The Delaware County authority referred to is the Southeastern Transportation Authority Appeal, 62 D. & C. 2d 757 (1973), hereinafter referred to as SEPTA Appeal.

The SEPTA Appeal decided within one year after the Community College case concerned the tax-exempt status of SEPTA property which had been leased to various types of tenants performing services which may or may not directly support SEPTA's operation.

In the SEPTA case, the court looked beyond the mere existence of a lease to the actual use of the property. At page 766, the court noted: "If the activities or services provided by the concessionaires, tenants or SEPTA itself are not reasonably necessary for the sufficient operation of SEPTA as a transportation authority, then those areas so occupied cannot enjoy a tax-exempt status."

At page 768, the court listed factors that it would consider in granting a tax-exempt status as, inter alia, the arrangements, if any, made between the landlord and the tenant, the measure of control by the landlord, the location of similar services in the general vicinity and the benefits, if any, of the particular activity to the operation of the tax-exempt landlord.

In quoting from Reading Municipal Airport Authority v. Schuylkill Valley School District, 4 Pa. Commonwealth Ct. 300, 286 A.2d 5 (1972), the Delaware County decision stated at pages 766 and 767, the following principles determining whether or not a property in a particular instance qualifies for tax exemption:

"'(I) A real property tax may be levied upon land owned by a public body not used for a public purpose but leased to a private individual for a commercial purpose. Pittsburgh School District v. Allegheny County, 347 Pa. 101, 31 A.2d 725 (1943); Pittsburgh v. Allegheny County, 351 Pa. 345, 41 A.2d 639 (1945);

" '(II) public property used for a public purpose is entitled to be exempted although persons using the facility are required to pay reasonable charges for refreshment or special entertainment, and this is so whether the public body furnishes those benefits directly or through licensees, New Castle v. Lawrence County, 353 Pa. 175, 44 A.2d, 589 (1945);

" '(III) indeed, the fact that properties of a public body are leased to private parties deriving profit therefrom instead of being operated by the body will not defeat the exemption if the properties are being used for the specifically authorized public purpose for which they were acquired, Pittsburgh Public Parking Authority v. Board of Property Assessment, 377 Pa. 274, 105 A.2d 165 (1954);

" '(IV) it is the use of the property and not the use of the proceeds from the property that determines whether tax exemption may constitutionally be granted, West View Borough Municipal Authority Appeal, 381 Pa. 416, 113 A.2d 307 (1955); Freeport School District v. Armstrong County, 162 Pa. Superior Ct. 237, 57 A.2d 692 (1948);

" '(V) that property used commercially serves the convenience of public users will not justify an exemption nor will the fact that the use is not indispensable or essential thereto defeat exemption; the test is whether the property's use in reasonably necessary for the efficient operation of the facility, Moon Township Appeal, 387 Pa. 144, 127 A.2d 361 (1956);

" '(VI) it is a judicial question for the ultimate determination of the courts as to whether the use is public and hence entitled to exemption, Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834 (1938); McSorley v. Fitzgerald, 359 Pa. 264, 59 A.2d 142 (1948).' Ibid at page 7."

Another series of cases concerning the tax-exempt status of property concerns apartment houses leased to low income, elderly and/or handicapped persons: Four Freedoms House of Philadelphia v. Philadelphia, 443 Pa. 215, 279 A.2d 155 (1971); City of Harrisburg v. Presbyterian Apartments, Inc., 18 Pa. Commonwealth Ct. 428, 337

A.2d, 297 (1975); Appeal of Phoebe Apts., Inc., et al, 64 D. & C. 2d 590 (1973). In all of these cases, the owners of the apartment houses are tax-exempt institutions which, similar to the present case, received rent from their tenants.

In determining the tax-exempt status of the apartment house, the courts were again required to look at the charitable use of the property by someone other than the owner. The courts were more concerned about whether or not the institutions remained one of "purely public charity" within the meaning of the Constitution and the statutes, rather than determine the issue based on the mere existence of a lease. In the Four Freedoms House of Phila. v. Phila. case the court held as follows: ". . . we do not believe each tenant's fractional payment of the operational expenses should eliminate appellant's tax-exempt status." See also Woods Schools Tax Exemption Case, 406 Pa. 579, 178 A.2d 600 (1962); 36 P.L.E. 41, §98 et seq.

The court finds that the appellants have not, based on the mere existence of a lease agreement, jeopardized a tax-exempt status to which they would otherwise be entitled. In so holding, the court is mindful of the language of our Supreme Court in YMCA of Germantown v. Philadelphia, 323 Pa. 401, 413-414, 187 Ate. 204, 210 (1936), wherein it was stated: "Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of the government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the cost of this protec-

tion, some other inhabitant must contribute more than his fair share of that cost . . . Any institution which by its charitable activities relieves the government of part of this burden is conferring the pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide . . . The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities."

The court's decision in this particular case is based on the following factors: (1) The owner of the property in question is a tax-exempt church; (2) The tenant in question is a tax-exempt charitable institution; (3) The use of the premises by the tenant is one exclusively reserved to an association of learning and charity; (4) The owner maintains control of the use of said premises by agreement; (5) No profit inures to the benefit of a landlord or tenant as a result of the charitable use.

## ORDER

And now, May 3, 1977, it is ordered and decreed that the appeals of Swarthmore Presbyterian Church and ABC-Swarthmore, Inc. from real estate tax assessments levied by the County of Delaware, the institution district of the County of Delaware and the Wallingford-Swarthmore School District are sustained, and it is ordered that the real estate of the respective non-profit corporations referred to in the foregoing opinion be entered upon the tax roles as exempt from taxation.